## Case No. 16,135.

UNITED STATES v. REED et al.

[13 Int. Rev. Rec. 148.]

Circuit Court, W. D. Tennessee. 1871.

INTERNAL REVENUE LAW—DISTILLERY TAX.

[Under Act July 20, 1868, the "deficiency" tax for which a distiller is liable is based on the quantity of spirits actually produced by him, unless this is less than 80 per cent. of the

capacity of his distillery, in which case the tax is to be estimated on such 80 per cent.]

[This was an action by the United States against James W. Reed and others, on a distiller's bond.]

WITHEY, District Judge (charging jury). The principal and sureties of the bond sued on are charged by the United States with liability for what is termed deficiency tax, barrel tax, and per diem tax, together with the penalty of five per cent. on the taxes alleged to be due and unpaid, and with interest of one per cent. per month on the taxes from the time they severally became due. . There is no dispute, gentlemen of the jury, but that defendants are liable for the per diem tax, which the proofs satisfy you has not been paid, together with the five per cent. penalty thereon, and interest at one per cent. per month. But the defendants say Reed, the distiller, paid taxes on all the whiskey manufactured, and therefore no recovery can be had for the deficiency tax assessed for the months of December, 1868, March and April, 1869. On the other hand, the government claims that, as the distiller paid taxes only on what his returns show he actually manufactured during those months, and which was not equal to 80 per cent. of the distilling capacity of his distillery, the additional tax assessed on such deficiency, viz., on the number of gallons which the distiller's returns for those months was less than 80 per centum of the producing capacity of his distillery, as estimated under the provisions of law, is owing on this bond. The attention of the court is challenged by defendant's counsel to a decision made by the circuit court of the United States, in the Northern district of Illinois, fully sustaining the view urged by the defence, in the case of U. S. v. Singer [Case No. 16,292]. The district attorney challenges the attention of the court to the provisions of the internal tax law, of July 20, 1868 [15 Stat. 125], claiming that the decision cited is not supported by the statute. Sitting in a circuit other than that in which the case of U. S. v. Singer was decided, I am not at liberty to adopt the opinion in that case, if on examination I am satisfied that court has for any reason fallen into an error; and I am compelled to say, after carefully studying the sections of the law controlling this question, that in my judgment the distiller was liable to be assessed up to 80 per cent. of the capacity of his distillery, whether he manufactured that quantity or not.

Ordinarily, I would not, before a jury, enter into the reasons which control my judgment on the construction of a statute, but it is desirable in this instance. The rule that the different provisions of a statute should be made to harmonize if possible, is never to be lost sight of if we would reach correct views of a statute, the various provisions of which are apparently conflicting. The first section of the statute in question declares that "every proprietor of a still, distillery, or distilling apparatus shall be jointly and severally liable for the taxes imposed by law on the distilled spirits produced therefrom," etc. Section 5 requires every person engaged in distilling, or intending to so engage, to give notice in writing to the assessor of his district, stating the place, etc., of his distillery, the kind of stills, the cubic contents thereof, and all information to enable his capacity for distilling to be readily ascertained. Other sections require further specific information to be given to the assessor, designed to put that officer in possession of every fact necessary to enable him to make the exactions which the law commands from the distiller. The 10th section requires, in addition, that the assessor and another party, appointed by the commissioner of internal revenue, shall make a survey of the distillery, and "estimate and determine its true producing capacity." There is a provision that every distiller shall provide a warehouse, to be situated on and to constitute a part of his distillery premises, to be used only for the storage of distilled spirits of his own manufacture. The 19th section requires entries to be made, from day to day, in books to be kept for the purpose, showing truly, among other things, "the quantity of grain or other material used for the production of spirits," and other facts designed to aid in investigation into the quantity distilled. He is also, by this section, to render the assistant assessor, on the 1st, 11th, and 21st days of each month, an account taken from the books, stating the quantity and kind of materials used for the production of spirits each day, and the number of wine gallons and of proof gallons of spirits produced and placed in warehouse. This is made on oath. There is a provision in section 22, whereby a distiller, on notice to the assistant assessor, may suspend work and have his distillery closed and locked by the officer. During the time it is so closed no tax accrues.

In view of all these provisions, the question is, What is the proper construction of section 20, which provides "that on return of the distiller's first return in each month, the assessor shall inquire and determine whether said distiller has accounted in his returns for the preceding month for all the spirits produced by him; and, to determine the quantity of spirits thus to be accounted for, the whole quantity of the materials used for the production of spirits shall be ascertained; and forty-five gallons of mash or beer, brewed or fermented from grain, shall represent not less than one bushel of grain. . . . In case the return of the distiller shall have been less than the quantity thus ascertained, the distiller . . . shall be assessed for such deficiency at the rate of fifty cents for every proof gallon, together with the special tax of four dollars for every cask of forty gallons, and the collector shall proceed to collect the

same as in case of other assessments for deficiencies; but in no case shall the quantity of spirits returned by the distiller, together with the quantity so assessed, be for a less quantity of spirits than 80 per cent. of the producing capacity of the distillery, as estimated under the provisions of this act." Thus we find provisions which, viewed separately, would give different rules for taxing the distiller, but there is no conflict. The 1st section makes the distiller liable "on the distilled spirits produced." By the 19th section he is to render a sworn account of the "number of wine gallons and of proof gallons of spirits produced," etc.; and by section 20 the assessor is to determine whether the distiller has accounted in his returns for the preceding month "for all the spirits produced by him." All of which clearly indicates that the quantity actually produced is all that can be taxed. On the other hand, it will be noticed that section 5 requires the distiller to report such facts as the kind of still, the cubic contents thereof, and information for determining the capacity of distilling. Other sections have the same object. The 10th section requires a survey to be made and on it an estimate and determination of the "true capacity" of the distillery. Then the work may be suspended on notice, when the officer locks the still, etc., and no tax accrues while the works are thus closed; and finally, the last clause of section 20, that in no case shall the quantity returned by the distiller, in connection with the quantity assessed as deficit, be less than 80 per cent. of the capacity of the distillery as estimated. Here there is a clear requirement that the distiller shall pay on nothing less than 80 per cent. of the producing capacity of his distillery.

Now it is clear that these provisions can easily be reconciled. Thus, the tax shall be on the quantity actually produced whenever it equals or exceeds 80 per cent. of the producing capacity of the works; whenever, on the contrary, the amount does not equal that quantity, then the tax shall be on a quantity within 20 per cent. of the producing capacity; that is, on 80 per cent. The distiller is fully advised, by section 20, that if he enters into the distilling business he will be required to pay a tax on 80 per cent. of the producing capacity of his works. This is evidently designed to protect the government against fraud in the reports. It is no secret to any one that the devices and practices resorted to by whiskey manufacturers and others dealing in the article, to evade the tax imposed, have taxed the ingenuity of congress and of the revenue department to institute means which shall, in some degree, if not wholly, check such frauds. If the distiller is not able, for want of materials, to produce eighty per cent. of the capacity of his distillery, he may avoid any tax by giving the required notice and having his works put under lock and key. It is not presumed, under this law, that a manufacturer of spirits will keep his distillery in operation, month after month, when he is producing less than eighty per cent. of its capacity, as by doing so he must pay a larger tax than the business will afford.

The court does not see that when the actual amount produced is less than eighty per cent., the distiller must make a false return under section 19, for in such case he is to return the true amount produced, on oath, and to this he should add the deficiency, to make the eighty per cent. not in order to show actual product, but to form the basis of the tax for which he is liable to be assessed. We see no good reason for holding that the tax is to be on less than eighty per cent. of the producing capacity, simply because the provisions of the act are "multifarious and complicated," nor because "the complex and expensive arrangements and safeguards to prevent fraud, thrown around the manufacturer of distilled spirits, could be dispensed with." The object of the legislation by congress was, undoubtedly, "to ascertain the product and thus compel payment of a tax on the whole of the article manufactured." But in view of the great inducements to fraud in rendering the accounts required to be made of actual product, and in view of frauds which had been practised, congress designed by this law to insure taxes on at least eighty per cent. of the capacity of the distillery—thus rendering the margin for frauds within the limits of twenty per cent. of capacity. Thus, it seems to me, we determine what the law is. With its justice or injustice the court has nothing to do, when once congress has said what the obligation of the distiller is. In brief, gentlemen, such are the reasons for holding that defendant Reed was bound to pay a tax on eighty per cent. of the producing capacity of his distillery; and if you find that he did not, then you will find what deficiency existed, and give a verdict for the government for the tax of fifty cents a gallon on such deficiency in each month, together with the per diem tax, the barrel tax, the penalty of five per cent., and the interest, at one per cent. a month, from the time when due.

I remark in conclusion, that my learned Brother Judge EMMONS, the circuit judge, informs me that he has already ruled in another district of his circuit substantially the point made in this case, holding in harmony with the conclusion I have reached. Thus forfeited, I cannot feel that the ruling in this case is other than is demanded by the statute.

The jury, without retiring, returned a verdict for the government for $3,049.94.